UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2010 JUN 24  AM 11:10

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Ex. Rel., ZACH HALLSTROM, | § § § | CIVIL ACTION NO._____ |
| | § | JURY DEMANDED |
| Plaintiff, | § § | |
| vs. | § § | A10CA462 SS |
| UNIVERSITY MEDICAL PHARMACEUTICALS CORPORATION, | § § § § | |
| Defendants. | § | |

**COMPLAINT FOR FALSE PATENT MARKING**

Plaintiff United States of America, Ex. Rel., Zach Hallstrom ("Plaintiff") files this Complaint as a *qui tam* action on behalf of the public for false patent marking against Defendant University Medical Pharmaceuticals Corporation ("Defendant") and alleges as follows:

**NATURE OF THE CASE**

1. As set forth below, Defendant has violated 35 U.S.C. § 292(a) by marking certain acne products as containing "patented" time-released Benzoyl Peroxide even though no such patent(s) exists. Defendant claims in advertising materials and product packaging that its acne products attack acne-causing bacteria with "patented time-released Benzoyl Peroxide" and contain a "patented breakthrough," suggesting that its marked products are not available from others and/or similar products are an infringement of its patents. Defendant marks its products with an intent to deceive the public and to gain a competitive advantage in the market.

2. Plaintiff seeks an award of monetary damages against Defendant pursuant to 35 U.S.C. § 292(b) of up to $500.00 for each offense, with half going to the use of the United States and the other half going to the person bringing the action.

### PARTIES

3. Plaintiff is a Relator under the terms of 35 U.S.C. § 282 of the patent laws of the United States. Although Article III standing is not a required, Plaintiff has standing. He purchased the products in question and suffered injury because he relied upon the misrepresentations of the Defendant and paid for the products in question. Had he known the truth, he would not have purchased the Defendant's products.

4. Defendant is a private company that was established in 1988 and incorporated in California. Current estimates show this company has an annual revenue of over $75 million and employs a staff of approximately 70. Defendant University Medical Pharmaceuticals Corporation can be served through its registered agent, Raymond J. Francis, 88 Maxwell, Irvine, California 92618.

### JURISDICTION AND VENUE

5. This is a civil action for false marking arising under the patent laws of the United States. Accordingly, this Court has exclusive subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 138(a).

6. This Court has personal jurisdiction over the Defendant. Among other things:

   A. Defendant has done and is doing business directly and/or through intermediaries in the Western District of Texas by marketing, promoting and offering for sale its acne products through its websites and through

2

        drug chain stores such as CVS, Walgreens, H.E. Butt Grocery, Target and Wal-Mart.

    B.    In addition, on information and belief, Defendant has offered for sale and sold and continues to offer for sale and sell its acne products to third parties in the Western District of Texas.

    C.    Defendant has placed its acne products into the stream of commerce, through established distribution channels, knowing and expecting that such products would be sold in the Western District of Texas.

    D.    In view of the foregoing, the Defendant directly or through intermediaries has committed the tort of patent marking within the State of Texas, and more particularly, within the Western District of Texas. Defendant thereby understood that its acts of false marking would cause injury in Austin, and has caused such injury in this District.

7.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b) in that acts of false patent marking have occurred in this District and a substantial part of the events giving rise to the false marking claims occurred in this District. The sales of the product, which form the underlying false marking claims, are substantial, continuous and systematic in that the Defendant has violated 35 U.S.C § 292, and falsely marked, advertised, distributed and sold products in the Western District of Texas.

## BACKGROUND FACTS

A.    THE PURPOSE OF THIS ACTION

8.    The purpose of this lawsuit is to act in the public interest to enforce the policy underlying the false marking statute. This is a *qui tam* action under 35 U.S.C. § 292.

3

**B.   THE POLICY OF THE PATENT MARKING STATUTES**

9. The patent marking statute exists to ensure that the public has accurate information on the existence of patent rights in articles.

10. Several purposes were explained by the Federal Circuit in *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1443 (Fed. Cir. 1998), such as: (1) helping to avoid innocent infringement; (2) encouraging patentees to give notice to the public that the article is patented; and (3) aiding the public to identify whether an article is patented.

11. When the Patent Act of 1952 was enacted, false patent marking was punishable as a criminal offense under Title 18 of the Unites States Code.

12. The Patent Act of 1952 retained a *qui tam* cause of action on behalf of the public to fine the offender in an amount up to $500.00 for each offense, with half going to the use of the United States, and the other half going to the person bringing the action.

13. False marking of unpatented articles as "patented" is injurious to the public interest, as explained by the United States Court of Appeals, in at least the following ways:

- Acts of false marking deter innovation and stifle competition in the marketplace;

- False marks may deter scientific research when an inventor sees a mark and decides to forgo continued research to avoid possible infringement; and

- False marking can cause unnecessary investment in design around or costs incurred to analyze the validity or enforceability of a patent with which a competitor would like to compete.

14. Additionally, the consumer seeing an article marked as "patented" is likely to infer the article possesses design or utilitarian features that are unique to such articles, and are not available in substitute articles from other producers, thus inducing consumer demand for the marked article.

4

C.   **FEDERAL PATENT POLICY**

15.   The Supreme Court stated in *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery*, 324 U.S. 806, 816 (1945), that patents by their very nature are affected with a public interest:

> The possession and assertion of patent rights are issues of great moment to the public. [Citations omitted.] A patent by its very nature is affected with a public interest. As recognized by the Constitution, it is a special privilege designed to serve the public purpose of promoting the progress of science and useful arts. At the same time, a patent is an exception to the general rule against monopolies and to the right of access to a free and open market.

16.   The United States Patent and Trademark Office agrees: "A patent by its very nature is affected with a public interest." 37 C.F.R. § 1.56(a).

17.   Due to the public's interest in the patent system, Congress has empowered "any person" to file a false marking action in Federal Court under 35 U.S.C. § 292, or request reexamination of any claim of an enforceable patent, whether or not the person acting is involved in a substantial controversy with the patentee, or has an adverse legal interest to the patentee, or has sustained an injury-in-fact. Thus, no Article III standing is required.

18.   The Supreme Court has stated:

(A)   "An unpatentable article, like an article on which the patent has expired, is in the public domain and may be made and sold by whoever chooses to do so." *Sears Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225 (1964);

(B)   "... federal law requires that all ideas in general circulation be dedicated to the common good unless they are protected by a valid patent." *Lear, Inc. v. Adkins*, 395 U.S. 653, 668 (1969); and

(C)   "In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying." *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001).

5

19. False patent marking is an impediment to these basic federal policies.

**D. FACTUAL BACKGROUND**

20. Defendant University Medical Pharmaceuticals is in the business of developing consumer products which it aggressively markets through its website and through its relationship with retailers throughout the country, and in Austin, Texas. While it markets several products, at issue here are two specific products for the treatment of acne.

21. The first product is AcneFree Sport, Clear Skin System. Defendant claims this product is effective against all acne, including breakouts caused by the perspiration, oils, dirt and friction that comes with sports or workouts. The front of the packaging prominently states "Patented Breakthrough! Time-Released TripleCLEAR™ Therapy."



It goes on to declare that this product has "Non-Stop Acne Clearing," just above a circular display that reads "24/7," thereby implying that the product works all the time. (A true and correct copy of the actual labeling on the package is attached as Exhibit A.) Indeed, on its website, it boasts that "AcneFree Time-Released Acne Medication Benzoyl Peroxide formula works 24/7 to keep you acne free." (Exhibit B.)

6

22. Similarly, Defendant's product AcneFree Clear Skin System states that it is significantly better than its competitor, PROACTIV® because among other reasons it "attacks acne-causing bacteria with Patented Time-Released Benzoyl Peroxide." (Exhibit C.)



This product likewise claims that it has "non-stop" clearing capabilities just underneath a circular symbol that boldly displays "24/7." The back of the packaging states that "Time-Released Benzoyl Peroxide works 24 hours a day, penetrating deep within the pores to continuously reduce sebum and attacks bacteria that causes blemishes and blackheads." (*Id.*)

23. The patent marking of Defendant's products which claim to have "patented" Time-Released Benzoyl Peroxide have been falsely affixed to all of its products with the intent to deceive the public. No patent(s) exists.

24. In fact, when a newsmagazine TV series on CBC Television conducted a study on the Defendant's products in 2005 some interesting conclusions were made. The newsmagazine tested the Defendant's product against its leading competitor Proactiv, which does not claim to have "Time-Released Benzoyl Peroxide." This group asked dermatologist Dr. Vicki Taraska, a cosmetic dermatologist and Dr. Lisa Kellett, a dermatologist, about the "Time-Released Benzoyl

7

Peroxide." Neither doctor knew what this meant. Dr. Taraska summed it up by saying: "It must be market jargon to differentiate them from the competitors." She said generally time-released topical drug delivery systems, like the patch, release medication slowly over time and maintain a certain level of medication throughout the day. Dr. Kellett said that if the benzoyl peroxide used in AcneFree was "encapsulated" (which it is not) it could be released over time. University Medical, critically, did not respond to the newsmagazine's telephone calls asking it to explain its patented "Time-Released Benzoyl Peroxide" methods. (The article is attached as Exhibit D.)

25. To evaluate intent under Section 292, the Federal Circuit has provided a framework under *Clonatech Laboratories, Inc. v. Invitrogen Corp.*, 406 F.3d 1347 (Fed. Cir. 2005). The Federal Circuit in this case said the following:

> Intent to deceive is a state of mind arising when a party acts with sufficient knowledge that what it is saying is not so and consequently the recipient of its saying will be misled into thinking that the statement is true. *Seven Cases v. United States*, 239 U.S. 510, 517-18 (1916). Intent to deceive, while subjective in nature, is established in law by objective criteria. *Id.* Thus, 'objective standards' control and 'the fact of misrepresentation coupled with proof that the party making it had knowledge of its falsity is enough drawing the inference that there was a fraudulent intent.' *See Norton v. Curtiss*, 57 CCPA 1384, 433 F.2d 779, 795-96 (1970). Thus, under such circumstances, the mere assertion by a party that it did not intend to deceive will not suffice to escape statutory liability. Such an assertion, standing alone, is worthless as proof of no intent to deceive where there is knowledge of falsehood. But in order to establish knowledge of falsity, the plaintiff must show by preponderance of the evidence that the party accused of false marking did not have a reasonable belief that the articles were properly marked (i.e., covered by a patent). Absent such proof of lack of reasonable belief, no liability under the statute ensues.

*Clonatech*, 406 F.3d at 1352-53.

8

26. The Southern District of Texas interpreted the *Clonatech* standard in *DP Wagner Mfg., Inc. v. Pro-Patch Sys., Inc.*, 434 F.Supp.3d 455 (S.D. Tex. 2006). In *Wagner*, Pro-Patch claimed it did not have intent to deceive because it did not mark its products to necessarily deceive the public, but rather to differentiate its products and avoid the logistical difficulty of putting different markings on different products. *Id.* at 457. The *Wagner* court rejected this argument, noting that in *Clonatech* the Federal Circuit made clear that a false marker's assertion that it acted for some reason other than to deceive (subjective good faith) provides no defense where the false marker acted with knowledge that the patent did not cover or protect the product. *Id.* at 457-58.

27. Second, Pro-Patch argued that it did not have an intent to deceive because it did not understand that it was doing anything wrong. *Id.* at 457. The *Wagner* court also rejected this argument, calling it "preposterous" to suggest that a false marker could avoid statutory liability on the ground that he did not know he was doing anything wrong. *Id.* at 457.

28. Defendant did not have, and could not have, a reasonable belief that its products were properly marked in light of the precise language on its product advertising coupled with the fact that no such patents exist. Moreover, it does not seem likely that Defendant's products could contain a time-released topical drug delivery system, even if it did not contain the "patented" statement.

29. Defendant is a sophisticated company with over $75 million in annual sales, 70 employees and a complex distribution chain. Its "patented" claims were called into question in 2005. Defendant therefore knew that did not have a patent for time-released benzoyl peroxide therapy and that such marking on its product advertising was false.

30.     Defendant sells its product for approximately $29.00.  Defendant therefore knew that many of its customers were making small purchases and it would not be practical to conduct an independent investigation to verify the accuracy of the patent information on the Defendant's product and advertising materials.

## COUNT I
## FALSE PATENT MARKING

31.     Plaintiff re-alleges and incorporates herein by reference the allegations contained in all of the paragraphs of the Complaint as if fully set forth herein.

32.     Defendant causes and continues to mark and advertise its products as being patented when no such patent exists.

33.     Defendant is a sophisticated company and has many decades of experience conducting business and advertising its products.  Defendant knew or should have known that there was no technology or method to "time-release" benzoyl peroxide, which is a topical ointment; and even if such technology existed that Defendant did not maintain a patent on such methodologies or products.

34.     Each offense of false marking caused by the Defendant has and continues to deceive the public to the financial benefit of the Defendant.

35.     Each offense of false marking caused by Defendant has and continues to deter competition to the financial benefit of the Defendant.

36.     Each false marking by the Defendant is likely to discourage or deter persons and companies from commercializing competitive products.

37.     Defendant's false marking has wrongfully stifled competition with respect to similar and potentially competing products, thereby causing harm to Plaintiff, the United States, and the public.

38.   Defendant has wrongfully and illegally advertised a patent monopoly that it does not possess, and as a result, has benefited commercially and financially by maintaining false statements of patent rights.

39.   Defendant is therefore liable to Plaintiff and to the United States under 35 U.S.C. § 292(b). The public interest requires that Defendant be enjoined from further acts of false marking, pay civil penalties, and make restitution for their ill-gotten gains.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1.   A judgment that Defendant has falsely marked products in violation of 35 U.S.C. § 292 by falsely advertising and marking products as "patented" for the purposes of deceiving the public;

2.   An accounting of the number, sales and revenue for any false marked articles;

3.   A judgment in favor of Plaintiff that Defendant has falsely marked items in violation of 35 U.S.C. § 292(a)-(b) in the form of a civil fine of $500.00 per falsely marked article, or in the alternative amount, as set for Court; one-half of any such award to be paid to the United States;

4.   An award of pre-judgment and post-judgment interest on any monetary award;

5.   An injunction prohibiting Defendant, and its officers, directors, agents, servers, employees, attorneys, licensees, successors, assignees, and those in active concert or participation with any of them, from violating 35 U.S.C. § 292(a); and

6.   Any such other relief to which Plaintiff, the United States, or the general public may be entitled.

11

### JURY DEMAND

Plaintiff respectfully requests trial by jury as to all issues so triable.

Dated:  June 22, 2010                              Respectfully submitted,

                                                                   _____
                                                                   Aashish Y. Desai (Texas Bar No. 24045164)
                                                                   Email:  desai@mocalaw.com
                                                                   MOWER, CARREON & DESAI, LLP
                                                                   701 Brazos Street, Suite 500
                                                                   Austin, TX 78701
                                                                   Telephone:    (512) 716-8930
                                                                   Facsimile:     (949) 474-9001
                                                                   Attorneys for Plaintiffs